HENRY LEONARD and others *v.* ROBERT FLUKER and another.

Minor heirs, who have not accepted, must be considered (saving their right to accept at a future time,) as strangers to the succession.

Under the provision of the Code of 1808, book 3, title 1. art. 74, which declares that " until the acceptance or renunciation, the inheritance is considered as a fictitious being, representing in every respect the deceased, who was the owner of the estate," prescription ran against a vacant succession, although minors were interested.

A change in the law by which prescription was allowed to run, under certain circumstances, against minors, will not deprive one interested in pleading it, of the benefit of the time elapsed before the repeal of the old law. The time so elapsed may be added to that since the majority of the party, to make out the necessary period of prescription.

APPEAL from the District Court of St. Helena, *Jones,* J.

GARLAND, J. The plaintiffs represent that they are the children and legal heirs of Eliza, the late wife of Samuel Leonard, who died in the month of November, 1818. They allege that a community of *acquêts* and gains existed between their mother and her husband, composed of personal property and lands, situated in the parish of St. Helena, which has never been divided according to law, and were not inventoried until the year 1841. They aver that they were minors at the time of their mother's death, and for many years afterwards.

The petitioners also aver, that in the year 1824, the Sheriff of St. Helena, under an execution which had issued on a judgment in favor of Whiting and Fletcher against Samuel Leonard, their father, seized and sold to Abner Womack, a tract of land on the Amité River, commonly called the *Redding tract,* containing 640 acres, which belonged to the community that existed between their deceased mother and Samuel Leonard, their father.

This sale, the petitioners aver, is null and void, because the whole property did not belong to their father, and the necessary formalities were not pursued in selling it. They state that the defendant Fluker pretends to be the owner of this land, comprising their undivided half. That he has cleared and cultivated it, destroyed valuable timber, and committed other trespasses : wherefore they claim $2400 for rent, and $2500 for damages.

They pray that Fluker and Leonard may be cited; that they, the petitioners, may be decreed to be the owners of one half of the land; that the Sheriff's sale may be declared a nullity; that a partition may be ordered between them and Fluker and Leonard, or whichever is the owner; and that the former may be condemned to pay the rent and damages claimed.

Fluker filed various exceptions to the petition, which were overruled; and he answered by general denial, and an admission that he was in possession of the land claimed, it forming a part of a larger tract purchased of one Kendrick. He averred that he held in good faith, under a just title, and had made improvements to the value of $1950, which he claimed in case of eviction. He further averred, that the plaintiffs are not entitled to all their mother's rights. He pleads the prescription of ten years, under a title translative of property; and prays that the representative of Kendricks' succession may be cited in warranty.

Leonard answered, by admitting the truth of the allegations of the plaintiffs. The administrator of Kendrick's estate was cited; but it does not appear he ever answered, or that any judgment by default was taken against him.

The facts of the case are, that Samuel Leonard was, many years ago, married to the mother of the plaintiffs; that she died about the month of November, in the year 1818, leaving five children, one of whom died about three months after the mother, and another about the year 1832. The three plaintiffs, at the time of their mother's death, were minors. The oldest being nine or ten years of age; the next, about seven or eight years, and the youngest about five or six years old. No inventory was made of the succession, until early in the year 1841; nor was any step ever taken by the father of the plaintiffs, during their minority, or by them afterwards, (until the period mentioned,) to accept or renounce the succession; nor was any motion made by any one to compel them to accept or renounce, although they were in the parish. An act of sale from George Reddin to John W., and Samuel Leonard, dated in August, 1818, was offered in evidence, but rejected by the judge, principally, because it was not exhibited when the defendant prayed oyer of the plaintiffs' title. In the year 1821, the title to the land was confirmed by Congress, in the

name of Samuel Leonard alone. In 1824 it was seized and sold by the Sheriff, under an execution against Samuel Leonard alone, purchased by Womack, who sold to Kendrick, and, at the probate sale of his estate, purchased by the defendant Fluker.

In May, 1813, George Reddin presented an application to the Land Officers in that district, asking for a confirmation of his title, by virtue of a settlement in 1809; but it seems not to have been acted on. When Leonard afterwards presented the claim for the action of the officers, he states that the original settler was named Vardeman, and that his settlement was in 1803 or 1804, and makes no mention of Reddin's settlement, nor of that of his predecessor Galloway. The heirship of the plaintiffs is clearly shown, and it is admitted that the land in possession of the defendant, is the same that was sold at the sale of Kendrick's succession. Notwithstanding a considerable portion of the evidence offered by the plaintiffs was rejected, the jury found a verdict in favor of John W. Leonard and Maria Leonard, each for one tenth, and the fourth of another tenth of the land in controversy; and against Henry Leonard, as his right of action was prescribed. A judgment was rendered according to the verdict, and a notary appointed to make partition; from which judgment the defendant Fluker, has appealed.

The opinion we have formed on the plea of prescription filed by the defendant Fluker, renders it unnecessary to express an opinion upon the numerous points which the case presents.

The evidence shows, that Mrs. Leonard died in or about the month of November, in the year 1818. In February, 1841, when this suit was filed, Henry Leonard was about thirty-two years of age, John was aged thirty years, and Maria twenty-six years. Until January 23d, 1841, none of the plaintiffs ever accepted or renounced the succession of their mother, although in the parish and residing in the neighborhood of the property claimed. The succession, now claimed by the plaintiffs, was opened while the old Civil Code was in force. That Code, p. 172, art. 118, tells us that an estate is vacant when no person claims it, either as an heir, or under any other title. This court, in the case of *Poulteney's heirs* v. *Cecil's executors*, 8 La. 321, said, minor heirs, without acceptance, must he considered as strangers to the

succession, which is, in itself, vacant. This being the law in force at the time, it seems to us, that the case comes within the meaning of that provision of the Civil Code of 1808, p. 162, art. 74, which says, that "until the acceptance or renunciation, the inheritance is considered as a fictitious being, representing in every respect, the deceased, who was the owner of the estate." Under this provision, it was held, in the case of *Davis' heirs* v. *Elkins and others*, 9 La. 135, that prescription would run against a vacant succession, although minors were interested. We see no reason to change the decision then made, and it is applicable to this case.

It has been urged that, as the provision of the Code of 1808, p. 162, art. 74, has been omitted in the present Civil Code, that law is not in force now. It is not necessary to decide whether prescription will run against minor heirs, who neither accept nor renounce a succession, since the adoption of the new Code; for even admitting in this case, that it does not, it will not benefit the plaintiffs. Previous to the time when the present Civil Code went into effect, on the 25th of June, 1825, six years and a half had elapsed, and five years more elapsed, after the youngest of the plaintiffs had arrived at the age of majority, before this suit was brought. It may be that the law has been changed by the new Code, when the heir is present or known; yet it does not, in our opinion, deprive the defendant of the benefit of the time elapsed, before the supposed change of the law. Laying out of view the time which elapsed between the period when the new Code went into operation, and the time when Maria Leonard arrived at the age of majority, more than eleven years and a half had elapsed, during which the prescription was running. The two periods may, in our opinion be united, and must bar this action.

The judgment of the District Court is therefore annulled; and ours is in favor of the defendants, with costs in both courts.

*Lawson*, for the plaintiffs.

*Bullard* and *Sheafe*, for the appellants.